IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Michael A. Sherrod,                :

      Plaintiff,              :

   v.                              :    Case No. 2:14-cv-2161

Commissioner of Social             :    JUDGE ALGENON L. MARBLEY
Security,                               Magistrate Judge Kemp
                                   :
      Defendant.

REPORT AND RECOMMENDATION

## I.  Introduction

Plaintiff, Michael A. Sherrod, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for supplemental security income.  That application was filed on December 15, 2010, and alleged that Plaintiff became disabled on September 1, 2007.

After initial administrative denials of his claim, Plaintiff was given a hearing before an Administrative Law Judge on April 5, 2013.  In a decision dated April 26, 2013, the ALJ denied benefits.  That became the Commissioner's final decision on September 9, 2014, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on January 16, 2015.  Plaintiff filed his statement of specific errors on March 16, 2015, to which the Commissioner responded on June 19, 2015.  No reply brief has been filed, and the case is now ready to decide.

## II.  The Lay Testimony at the Administrative Hearing

Plaintiff, who was 51 years old at the time of the administrative hearing and who has an eighth grade education, testified as follows.  His testimony appears at pages 33-49 of the administrative record.

Plaintiff first testified that he became disabled on

September 1, 2007.  That was the date that he became depressed and cut himself off from society.  He was also let go from work on that date.  At the time of the hearing, he was seeing a social worker twice a month and a doctor once a month for medication. All of his medication was for mental health issues.

Plaintiff said that he was depressed all the time.  He was also uncomfortable around people.  He thought many of his problems came from his being in jail at a young age.

Plaintiff did go to church, but usually sat with his mother and left if the service got too loud.  He said that his medications seemed to be helping him.  Plaintiff also mentioned that he had swelling in his right ankle if he stood for too long. He soaked his ankle or used a heating pad several times a week, and also elevated it to chair height.  Activity and hot weather affected his breathing.

On the emotional side, Plaintiff testified that he was depressed, with crying spells several times per week.  His appetite was variable and he had memory problems, perhaps from a prior head injury.  He also experienced suicidal thoughts, which were being helped by medication and treatment.  Three or four times a week, he was unable to get out of bed.  He had panic attacks in public.

### III.  The Medical Records

The medical records in this case are found beginning on page 229 of the administrative record.  The Court will summarize the pertinent medical records as well as the opinions of the state agency reviewers.

Southeast, Inc. performed a diagnostic assessment on January 30, 2009.  Plaintiff reported depression and an inability to concentrate.  He had used alcohol and cocaine within the past twelve months and had attempted suicide four months before.  He appeared slightly agitated at the time and had a sad expression.

-2-

His mood was depressed and his recent memory was impaired.  The
diagnoses included major depressive disorder, severe, and anxiety
disorder, and his GAF was rated at 55.  A psychiatric follow-up
was indicated.  (Tr. 229-35).  When seen in 2010, his condition
was relatively unchanged.  He had served some time in jail in
2010 for a probation violation and was assessed by NetCare in
January, 2011, at which time he reported constant depression and
a desire not to leave his house.  He was somewhat reluctant to
answer some assessment questions, calling his reliability into
question.  He was diagnosed with depression and counseling was
recommended.  (Tr. 271-76).

Dr. Tilley, a psychologist, and Troy Bell, a social worker,
completed a form for the Ohio Department of Job and Family
Services in 2011.  They found that Plaintiff was moderately
limited in his ability to carry out detailed instructions, to
sustain an ordinary routine without special supervision, to work
in proximity to others, to accept criticism, to get along with
others, to respond to changes in the work setting, and to be
aware of hazards, and that he had marked restrictions in the
areas of handling ordinary work stress and interacting with the
general public.  (Tr. 282).  They also detailed the results of a
clinical interview at which Plaintiff reported rarely leaving his
home since 2009 and having panic attacks when out in public.  He
also appeared "terrified" during the interview.  (Tr. 283).  A
functional capacity assessment was also done by someone at
Community Counseling, who reported that Plaintiff's mood and
affect was depressed, anxious, and flat; that he had paranoid
ideation; that his concentration and memory were poor; that he
had poor insight; and that his ability to deal with workplace
issues was poor as well.  (Tr. 287-88).

Dr. Tanley, a clinical psychologist and neuropsychologist,
conducted a consultative examination on October 24, 2011.  As he

-3-

did with other evaluators, Plaintiff told Dr. Tanley that he had been depressed for several years, without knowing why, and that he seldom left home. His affect was sad and his eye contact was poor. Dr. Tanley saw no signs of paranoid ideation. Plaintiff's recent and remote memory were intact. The only diagnosis made was a depressive disorder not otherwise specified. Dr. Tanley rated Plaintiff's GAF at 45 and observed that Plaintiff's "self-report is on par with observed signs" and that his "[s]elf-report data appear reliable." From a functional standpoint, Dr. Tanley described Plaintiff as having understanding consistent with the low average range of intelligence; likely having difficulty in dealing with increased complexity; having significant difficulty in conforming to social expectations in a work setting; and being "at risk for workplace pressure." (Tr. 313-17).

Dr. Whitehead was the consultative physical examiner. He diagnosed Plaintiff with right ankle pain, social phobia, and intermittent shortness of breath, and concluded that Plaintiff could do light duty work but "would be best if he was standing only intermittently for four to five hours a day total." (Tr. 320-22).

Finally, Dr. Farooqui, Plaintiff's treating psychiatrist, completed a functional capacity assessment form on April 4, 2012. He reported a number of marked limitations, including in the areas of maintaining concentration and attention, performing within a schedule, working near others, behaving appropriately, and responding to changes in the work setting. He thought Plaintiff would decompensate if placed under ordinary work stress. (Tr. 344-49).

State agency reviewers also expressed opinions about Plaintiff's functional capacity. Initially, Dr. Swain, who did not have the benefit of any opinion evidence, concluded that more information was needed to evaluate Plaintiff's claim of a mental

disability.  Upon reconsideration, Dr. Waggoner determined on
October 27, 2011, that Plaintiff had some moderate limitations
but could do simple repetitive tasks in a low stress environment
without strict time or production pressures and could relate to
others on a superficial basis.  (Tr. 73-73).  From a physical
standpoint, Dr. Jackson-Smoot concluded that Plaintiff could do
medium work with some limitations, including the use of foot
controls with the right foot, and restricted him from exposure to
hazards and to concentrated exposure to extreme cold, noise, and
vibration.  (Tr. 71-73).

IV.  <u>The Vocational Testimony</u>

Dr. Richard Oestreich was the vocational expert in this
case.  His testimony begins on page 49 of the administrative
record.

First, Dr. Oestreich was asked to assume that the only
relevant past work in which Plaintiff had engaged was as a
delivery driver and a picker.  He said that delivery driver was a
medium, semi-skilled job, and picker was a medium unskilled job.

Dr. Oestreich was asked some questions about a hypothetical
person of Plaintiff's age, education, and work experience who
could work at the light exertional level, but who could operate
foot controls only occasionally with the right foot.  The person
could frequently climb ramps and stairs and stoop, crouch, kneel,
and crawl.  The person could not climb ladders, ropes, and
scaffolds.  Further, the person could not work with large groups
of people, could not tolerate concentrated exposure to extreme
cold, very loud noises, or excessive vibration, and had to avoid
all exposure to unprotected heights.  From a psychological
standpoint, the person was limited to simple, routine, repetitive
tasks performed in a low-stress environment defined as only
occasional decision-making and only occasional changes in the
work setting, with no assembly line work, and with no interaction

-5-

with the public and only occasional interaction with coworkers
and supervisors.  Finally, the person could be off task up to 5%
of the workday.  According to Dr. Oestreich, someone with those
limitations could not do any of Plaintiff's past work, but could
do jobs like packager, sorter, or housekeeper, all of which were
light and unskilled.  He gave numbers for those jobs in the
State, local, and national economies.  Being absent from work
five days per month would preclude gainful employment, however,
as would the need to elevate the right leg one or two hours per
day on an unscheduled basis or the presence of specific marked
limitations in areas of work function.

     V.  <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 18-
24 of the administrative record.  The important findings in that
decision are as follows.

The Administrative Law Judge found, first, that Plaintiff
had not engaged in substantial gainful activity since his
application date of December 15, 2010.

Going to the second step of the sequential evaluation
process, the ALJ determined that Plaintiff had severe impairments
including migraine headaches, a depressive disorder not otherwise
specified, social phobia, and the residual effects of a remote
right ankle fracture.  The ALJ also found that these impairments
did not, at any time, meet or equal the requirements of any
section of the Listing of Impairments (20 C.F.R. Part 404,
Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process,
the ALJ found that Plaintiff had the residual functional capacity
to work at the light exertional level except that he could
occasionally use his right lower extremity for the operation of
foot controls and could frequently climb ramps and stairs, stoop,
kneel, crouch, and crawl.  He was precluded from climbing
ladders, ropes, and scaffolding, from working in environments

-6-

involving concentrated exposure to extremes of temperature, very
loud noise, or excessive vibration, and from working around
unprotected heights.  He retained the capacity for low stress
work, defined as simple, routine, repetitive tasks which allowed
the worker to be off task for up to five percent of the workday,
involved only occasional decision-making and changes in the work
setting and only occasional interaction with coworkers and
supervisors, with no contact with the public or large groups of
people and no assembly-line type work.

The ALJ found that, with these restrictions, Plaintiff could
not do any of his past relevant work.  However, he could do the
three light jobs identified by the vocational expert - packager,
sorter, and housekeeper.  The ALJ further found that these jobs
existed in significant numbers in the regional, State, and
national economies.  Consequently, the ALJ concluded that
Plaintiff was not entitled to benefits.

VI.  Plaintiff's Statement of Specific Errors

In his statement of specific errors, Plaintiff raises three
issues.  He asserts that (1) the ALJ improperly rejected the
opinions of treating sources and improperly credited the opinions
of the state agency reviewers; (2) the ALJ did not properly
evaluate Plaintiff's credibility; and (3) the ALJ should not have
relied on the vocational expert's testimony because it was given
in response to an improper hypothetical.  These issues are
considered under the following legal standard.

Standard of Review.  Under the provisions of 42 U.S.C.
Section 405(g), "[t]he findings of the Secretary [now the
Commissioner] as to any fact, if supported by substantial
evidence, shall be conclusive. . . ."  Substantial evidence is
"'such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion'"  Richardson v. Perales, 402
U.S. 389, 401 (1971) (quoting Consolidated Edison Company v.
NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere

-7-

scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

A. Treating Source Opinions

Plaintiff's first argument is that the ALJ did not properly evaluate the opinion of Dr. Farooqui, the treating psychiatrist, neither crediting his opinion properly nor articulating the basis for his decision. In order to assess this claim, the Court begins by reviewing in some detail what the ALJ said about that opinion.

Prior to discussing specifically Dr. Farooqui's opinion, the ALJ noted that the records showed that "within six months of initiating mental health treatment, the claimant experienced improvement is (sic) his symptoms with medication management." Tr. 20). This included being more comfortable around people, being able to talk to his neighbor, and using public transportation. Those records documented the fact that Plaintiff could control his symptoms with medication, and he was able to live independently, do chores, and attend church and doctors' appointments. Id. The ALJ also commented on the fact that

-8-

Plaintiff's presentation to Dr. Tanley was inconsistent with his presentation to any other examiner and that there were instances of his being non-compliant with medical recommendations.  (Tr. 21-22).  The ALJ then explained that he had given significant weight to the opinion of Dr. Waggoner, the state agency psychologist, because her opinion was consistent with this interpretation of the record.

After discussing some of the conclusions reached by Drs. Tilley and Tanley, the ALJ then turned to Dr. Farooqui's opinion. The ALJ gave these reasons for declining to give it significant weight: (1) it was "internally inconsistent with his own reported objective established clinical findings that the claimant had experienced improvement in his symptoms with medication management"; (2) "Dr. Farooqui relied quite heavily on the subjective reports of symptoms and limitations provided by the claimant, in that he uncritically accepted [those reports] as true"; (3) "there exists good reasons for questioning the reliability of the claimant's subjective complaints"; and (4) "[t]he possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another." (Tr. 23).  The ALJ found that especially likely here because "the opinion in question departs substantially from the rest of the evidence of record ...." Id.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once.  20 C.F.R. §404.1527(c); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or

-9-

contradict that opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th
Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir.
1990).  The Commissioner may also evaluate other objective
medical evidence, including the results of tests or examinations
performed by non-treating medical sources, and may consider the
claimant's activities of daily living.  Cutlip v. Secretary of
HHS, 25 F.3d 284 (6th Cir. 1994).  No matter how the issue of the
weight to be given to a treating physician's opinion is finally
resolved, the ALJ is required to provide a reasoned explanation
so that both the claimant and a reviewing Court can determine why
the opinion was rejected (if it was) and whether the ALJ
considered only appropriate factors in making that decision.
Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir.
2004).

    First, the Court sees no articulation error here.  The ALJ's
decision, as a whole, is specific about why the ALJ did not give
controlling or significant weight to Dr. Farooqui's opinion.  As
the ALJ viewed the record, Plaintiff was not a reliable reporter
and had tendencies or inclinations to exaggerate his symptoms.
Objectively, he improved once he was on medication.  Other
examiners (particularly Dr. Tanley) did not see him as impaired
as Dr. Farooqui did, and the state agency psychologist did not
either.  That is enough of an explanation to allow the Court and
the Plaintiff to understand why it was that Dr. Farooqui's
opinion was not accepted.

    Second, the reasons given by the ALJ have substantial
support in the record.  At the time Plaintiff reported severe
symptoms to Dr. Tilley, he had not been in treatment or on
medication.  By August of 2011, he was, as the ALJ noted, feeling
more comfortable and able to be out in public and to socialize.
(Tr. 307).  That note also shows a "softening" of his paranoia
and an improvement in his mood and affect.  His behavior
throughout that period was described as appropriate.  Even into

-10-

2012, he was still riding the bus, and he also did not pick up a medication prescribed for him. (Tr. 340). The ALJ was correct when he observed that there is nothing in Dr. Farooqui's notes which would tend to support the extreme limitations he reported on the form he completed, and, as the Commissioner notes, Dr. Farooqui did not provide any substantiation for his findings even though the form allowed him to do so.

The only remaining ground which the ALJ cited - apart from his observation that sometimes doctors defer to their patients when they find them sympathetic, an observation the Court gives no weight to, see, e.g., Pettibone v. Comm'r of Social Security, 2013 WL 3279263 (S.D. Ohio, June 27, 2013), adopted and affirmed 2013 WL 5493055 (S.D.Ohio, Oct. 2, 2013) - was that Plaintiff was not a credible reporter of symptoms. It seems a reasonable inference from the record that Dr. Farooqui gave significant weight to Plaintiff's self-report despite the absence of many objective signs to corroborate some of the more extreme symptoms, so that is an acceptable factor for discounting Dr. Farooqui's opinion to some extent if the record supports the ALJ's credibility findings. That leads the Court to the second claim of error.

B. Credibility

It is also the law that a social security ALJ is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking. Rather, the ALJ must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors. 20 C.F.R. §404.1529(c)(3). Although the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not

considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not have substantial support in the record. See, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).

Plaintiff argues that the ALJ mis-cited the testimony and did not properly discuss activities of daily living as a factor that bolstered his credibility. In turn, the Commissioner argues that the ALJ explained his decision adequately and the record supports it.

Again, it is important to focus on the ALJ's rationale for discounting Plaintiff's credibility. Some of the factors he relied on are set out above, including inconsistencies in Plaintiff's presentation, his failure to follow up with medical recommendations, and his improvement with medication. The ALJ also referred to his findings about whether Plaintiff had a mental impairment that met or equaled any section of the Listing of Impairments - findings which indicated that Plaintiff had only moderate restrictions in most areas of work-related functioning. The ALJ did discuss some activities of daily living, especially those which were inconsistent with a claim of extreme restrictions in various areas, such as socialization, and the ALJ did credit a good portion of Plaintiff's testimony, finding him more limited in certain areas than Dr. Tanley did, and rejecting the physical capacity assessment of the state agency physicians. The ALJ also mentioned Plaintiff's felony record, speculating that it was hindering his ability to obtain employment and that seeking disability benefits was an easier way of getting regular income, but that constituted only a minor part of the overall credibility discussion. (Tr. 20-22).

An ALJ has a substantial amount of discretion to make judgments about a claimant's credibility, and a reviewing Court must give those judgments a substantial amount of deference. In the final analysis, the Court must give heed to the proposition

-12-

that an ALJ's credibility finding is something that a reviewing court "may not disturb absent compelling reason." <u>Smith v. Halter,</u> 307 F.3d 377, 379 (6th Cir.2001). Reviewing courts "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir.1984). Here, Plaintiff is asking the Court to do just that. Because the ALJ had a substantial basis, grounded in the record, for discounting Plaintiff's credibility to some extent, the Court finds no error in the way that the ALJ made his credibility determination.

C. <u>Reliance on the Vocational Testimony</u>

Plaintiff's sole criticism of the vocational testimony is that it was given in response to an inaccurate hypothetical question - one which did not, for the reasons discussed above, take properly into account all of Plaintiff's limitations. Because the Court has found no merit in Plaintiff's other arguments, further discussion of this issue is unnecessary.

VII. <u>Recommended Decision</u>

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Defendant Commissioner.

VIII. <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the

-13-

magistrate judge with instructions.   28 U.S.C. §636(b)(1).

     The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.   <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge
